# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **R.M., M.C.-1, and B.B.**

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 16-0621** (Mercer County 15-JA-161-D3, 15-JA-162-D3, & 15-JA-163-D3)

## MEMORANDUM DECISION

Petitioner Father K.M., by counsel John G. Byrd, appeals the Circuit Court of Mercer County's June 7, 2016, order terminating his parental rights to R.M. and his custodial rights to M.C.-1 and B.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), William O. Huffman, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred when it admitted evidence under Rule 404(b) of the West Virginia Rules of Evidence and terminated his parental rights upon inadmissible evidence and a lack of evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2015, the DHHR filed an abuse and neglect petition against the following individuals: petitioner, the biological father of R.M. and B.B.; the biological father of M.C.-1, D.P., who was incarcerated at the time; M.C.-2, the biological mother of M.C.-1 and R.M.; and M.B., the biological mother of B.B. The petition was based upon a referral from M.C.-1's school regarding potential sexual abuse to the then-six-year-old child, who is a "profoundly handicapped, partially blind and non-speaking child." According to the referral, M.C.-1 had recently begun touching herself and wiggling suggestively in her seat. During a diaper change, staff observed that M.C.-1's hymen may have been broken and that her vaginal area was red. As

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one child and one mother share the same initials, we will refer to them as M.C.-1 and M.C.-2, respectively, throughout the memorandum decision.

1

such, a Child Protective Services ("CPS") worker arrived at the school to investigate. The child's emergency contact listed petitioner as her stepfather, although it was later determined that he was not married to M.C.-1's mother. Additionally, petitioner was identified as a registered sex offender. As such, the child's mother, M.C.-2, was called to the school, where she "hesitantly" agreed to take the child for medical examinations scheduled by law enforcement and CPS.

Subsequently, the examination was identified as abnormal due to a vaginal tear and multiple tags on M.C.-1's rectal area. Thereafter, CPS and law enforcement responded to the mother's home and found petitioner home alone with R.M., although it was unclear whether petitioner actually lived in the mother's home at the time. However, law enforcement also found six marijuana plants, which reportedly caused M.C.-1's clothes to smell so strongly that she could not wear them.

According to the petition, the DHHR implemented a safety plan whereby M.C.-1 and R.M. were removed from the home.[2] Further, the DHHR alleged that law enforcement had previously conducted several criminal investigations focusing on petitioner regarding sexual abuse, including one that concerned a child with special needs. The DHHR further alleged that the mother minimized petitioner's previous offenses and was "highly defensive" of the allegation that petitioner sexually abused the child. In fact, the mother blamed the child's injuries on other causes, such as masturbation, falling, or school staff. The petition further alleged that petitioner abandoned B.B. Ultimately, the circuit court found imminent danger to the well-being of M.C.-1 and R.M. and removed them from the home. B.B. was ordered to remain in the home of her biological mother. Petitioner later waived his preliminary hearing.

In April of 2016 the circuit court held an adjudicatory hearing, during which petitioner testified that he had no opportunity to abuse M.C.-1 because he was "never around the child." In fact, petitioner testified that he did not live in the home where M.C.-1 and R.M. lived. Instead, he claimed that he only visited the home to pick up R.M. However, the child's maternal grandmother directly contradicted this testimony. Specifically, the grandmother testified that petitioner did spend time alone with M.C.-1 and changed her diapers and bathed her.

The circuit court also heard testimony from other witnesses, including a Sexual Assault Nurse Examiner who examined M.C.-1. According to this witness, the child's examination was abnormal for a child her age. A West Virginia State Trooper testified as to the absence of male DNA on evidence obtained from the child's examination. However, the officer testified to her familiarity with petitioner due to having arrested him in the past and his registration as a sex offender. The officer testified that petitioner was previously charged with multiple sex offenses, but pled guilty to only one charge as part of a plea deal. Petitioner objected to this evidence based on Rule 404(b) of the West Virginia Rules of Evidence, but the circuit court overruled the objection. Additionally, an employee from the Bureau for Child Support Enforcement testified that petitioner was in arrears on his child support for B.B. According to testimony from B.B.'s mother, petitioner had not seen the child for over ten years and she had not received child support from him in approximately six years. Petitioner further admitted that he had not seen B.B. in several years.

---

[2]B.B. did not live in petitioner's home at the time of the petition's filing.

After the presentation of evidence, the circuit court specifically found that "something traumatic" happened to M.C.-1 while in the care of petitioner and the child's mother and further that the abuse extended to R.M. as another child in the home. The circuit court also found that petitioner had no relationship with B.B. and, thus, neglected that child. Ultimately, the circuit court found that petitioner was an abusing parent.

In May of 2016, the circuit court held a dispositional hearing, after which it terminated petitioner's parental rights to R.M. The circuit court further terminated petitioner's custodial rights to M.C.-1 and ordered that he have no contact with the child. As to B.B., then sixteen years old, the circuit court terminated petitioner's custodial rights to the child and ordered the guardian to inquire as to whether she desired that petitioner's parental rights be terminated.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, the Court finds no error in regard to petitioner's allegation that the circuit court erred in admitting evidence of his prior conviction for a sex crime involving a minor. Petitioner argues at great length that the introduction of this evidence violated Rule 404(b) of the West Virginia Rules of Evidence and should have been excluded. However, petitioner wholly ignores our prior cases on the matter, wherein we have held that

"[p]rior acts of violence, physical abuse, or emotional abuse toward other children are relevant in a termination of parental rights proceeding, are not violative of W.Va.R.Evid. 404(b), and a decision regarding the admissibility

---

[3]By order entered on September 1, 2016, the circuit court terminated petitioner's parental rights to B.B. Petitioner appeals from the June 7, 2016, dispositional order. Accordingly, the termination of his parental rights to B.B. is not at issue in this appeal.

thereof shall be within the sound discretion of the trial court." Syl. Pt. 8, *In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 7, *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 490 S.E.2d 642 (1997). Petitioner's entire argument on this issue hinges on his assertion that introduction of his criminal history in the abuse and neglect proceeding violated Rule 404(b). However, as the holding above makes clear, evidence concerning prior abuse to other children is not only relevant in an abuse and neglect proceeding, but its introduction does not violate that rule. In the instant matter, the circuit court admitted evidence of petitioner's status as a registered sex offender and his prior crimes against minors as relevant to the issue of M.C.-1's sexual abuse. Because we have held that such evidence is not only relevant but also admissible, we find no abuse of the circuit court's discretion below.

Finally, the Court finds no error in regard to the circuit court's termination of petitioner's parental and custodial rights below. Petitioner's argument in this regard is again premised, in part, on the accusation that the evidence of his prior sex crimes was inadmissible. As set forth above, this argument is without merit. Petitioner additionally argues that there was no evidence that he abused M.C.-1 in any way. According to petitioner, the child's examination was inconclusive as to whether or not any abuse occurred, and the circuit court further lacked evidence that he was present when the child's injury, if any, occurred. The Court does not agree. The evidence below, including the medical testimony, was sufficient to establish that the child was injured, although there was no direct evidence that petitioner caused that injury. However, there was evidence that petitioner cared for the child at the time the injury occurred and was alone with her. While petitioner testified to the contrary, it is clear that the circuit court found the child's grandmother's testimony more credible. We have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, it is clear that the circuit court had sufficient evidence upon which to find that the child suffered a traumatic injury while in petitioner's care.

In addressing situations in which the identity of an abuser has not been determined, we have held as follows:

> "Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser." Syllabus Point 3, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. Pt. 4, *In re Harley C.*, 203 W.Va. 594, 509 S.E.2d 875 (1998). In this case, there was clearly no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected because neither petitioner nor the mother took any action to identify the abuser, despite the fact that the child's medical examination revealed she had been injured. As such, we find no error in

4

the circuit court's termination of petitioner's parental rights to R.M. or his custodial rights to M.C.-1 and B.B.

For the foregoing reasons, we find no error in the circuit court's June 7, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II